**UNITED STATES DISTRICT COURT**

For the
**SOUTHERN DISTRICT OF INDIANA**
*Indianapolis Division*

**FILED**

**10/27/2025**

**U.S. DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**Kristine L. Seufert, Clerk**

| | |
|---|---|
| **CALI MILLER,** | ) |
| Plaintiff, | ) |
| vs. | ) 1:25-cv-02152-SEB-MJD |
| | ) |
| **LIAM BENNETT SMITH,** | ) |
| Defendant. | ) |

**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**I. INTRODUCTION**

Plaintiff Cali Miller submits this brief in support of her Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56-1.

This case arises from Defendant's knowingly false and malicious statements published online accusing Plaintiff of criminal and predatory behavior. The undisputed evidence demonstrates that Defendant made these statements with actual malice, without privilege, and with intent to harm Plaintiff's reputation and emotional well-being.

Because no genuine issue of material fact exists as to the falsity, publication, and damaging nature of Defendant's statements, Plaintiff is entitled to judgment as a matter of law.

**II. STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**

1. On September 2, 2025, Defendant Liam Bennett Smith made statements on YouTube asserting that Plaintiff Cali Miller is a "predator" who intended to harm a child.
2. These statements were false when made.
3. Defendant knew or recklessly disregarded the falsity of these statements.
4. Defendant published the statements to third parties without privilege.
5. Defendant's conduct caused Plaintiff substantial harm, including damage to reputation, emotional distress, and humiliation.
6. Defendant has admitted or otherwise failed to produce admissible evidence creating a genuine dispute as to these facts.

**PLAINTIFF'S STATEMENT ON THE DEFENDANT'S MULTIPLE INSTANCES OF DEFAMATION AND HARASSMENT**

**Video 1 titled: "Katie Cruz: Christian P3d*phile Influencer" published to Youtube on 2025-09-02**

6:40 "As we delve deeper into Katie Cruz, we'll of course see a lot of double-speak happening because there will be other instances in which there entire goal is to justify being attracted to minors and acting upon those attractions."

9:20 "At this point I would like to establish as a fact Katie Cruz's intent to harm."

32:00 "The evidence put forth in the TikToks didn't seem robust enough to make a connection between Katie Cruz and Cali Miller. And the last thing I want to do is throw some random person from Indiana under the bus without concrete evidence. This is the most extreme thing you can accuse a person of being, a child predator."

33:19 "They initiated an order of protection against Cali Miller, an order of protection that was denied by a judge of the name Jennifer Kinsley in 2023. The petitioner has not shown by a preponderance of the evidence that harassment has occurred sufficient to justify the issuance of an Order for Protection." (This shows that a Magistrate Judge didn't believe that the Plaintiff was a threat to Lucy)

44:20 "Katie Cruz is Cali Miller… I feel like we've established so far 1 that Katie Cruz is a very sick individual who absolutely has an intent to harm."

44:41 "I think it's important for anyone in a community of which Katie Cruz's IRL (in real life) counterpart is included in to be aware exactly how dangerous this person is."

**Video 2 titled: "How YouTube Protects Predators" published to YouTube on 2025-09-03**

The thumbnail contained a copyrighted photo of the Plaintiff, Cali Miller, with blonde hair with a black streak wearing a blue shirt.

0:30 "This was an exposé on a very public online predator…"

1:15 "Nothing in here was any more aggressive than you would see in a Chris Hansen takedown or the infinite other videos on YouTube exposing online predators." (Compares Plaintiff to online predators)

4:05 "I wrote in there, "please tell me exactly what was wrong here, so that I can make another video about Katie Cruz and not do this again,"" (Intent to continue harassment and defamation)

6:09 "I would like to talk more about Katie, and I will. I will make another video about you Katie. I don't care if I get a strike for it." (Intent to continue harassment and defamation. Acknowledging that he can get a YouTube strike for defamation.)

6:55 "You might also want to take a look at my Twitter. I'm not gonna say why you might want to take a look at my Twitter, couldn't do that. But, there might be some cool tweets you want to check out. That's all I'll say." (Directing Defendant's viewers to Twitter where Defendant uploaded the first video.)

7:11 "Secondly, steal my content… reupload stuff that gets taken down, post clips, I don't care." (Defendant instructing viewers to continue sharing his first defamatory video about Plaintiff.)

**Video 3 titled "Content Fed: Katie Cruz" published to YouTube 2025-10-18**

The thumbnail contained a copyrighted photo of Plaintiff, Cali Miller, with blonde hair with a black streak wearing a blue shirt.

0:29 "The mere mention of the name Katie Cruz has gotten countless YouTubers videos taken down via mass reporting campaigns by a cabal of online predators. Predators who will no doubt be watching this very video right now. Predators who I'm assuming are going to mass flag this very video."

1:39 Defendant has a large print out of a copyrighted photo of Plaintiff, Cali Miller, with blonde hair and a low cut shirt in the background.

8:04 "Imagine my shock when I found that my video exposing someone who is actively preying on children was removed from YouTube…"

9:55 "You see we have just about 300 active users in the diddler squad" (diddler is slang for child molester)

10:32 The Defendant displays a screenshot of video 2 titled "How YouTube Protects Predators," of which the thumbnail is a photo of the Plaintiff.

11:00-12:39 This section shows the large print out of The Plaintiff, Cali Miller. The Defendant explains that if this video is removed, he plans to bring the large print out to the Plaintiff's home town to tell everyone "who you are and what you tried to do to that 10 year old child."

12:32 "If this video gets limited monetization… big Katie goes to Indiana." (This shows the Defendant was for a time profiting or attempting to profit from the defamatory videos.)

13:59 "Katie started documenting her sexual obsession with this child."

14:20 "We then went into gratuitous detail about Katie touching on, tickling, and cuddling Lucy and her sister." (The Defendant implies that the Plaintiff was touching Lucy and her sister in an inappropriate way.)

17:40 Quoting the character of God speaking about Plaintiff in Plaintiff's blog "You resisted the temptation of lust." Defendant stops to looks at camera as if he didn't believe it. "Have you read your blog? You dumb bitch. Have you read your blog, you stupid fat bitch?" (Defendant is implying that the characterization of the Plaintiff in the Plaintiff's blog is untrue.)

20:35 Defendant points to large print of Plaintiff, "this person still very much had intentions toward their kid." (Implying that Plaintiff has bad intentions.)

21:19 Defendant displays several copyrighted photos of the Plaintiff, Cali Miller. Combined with the overall tone of the video and the many instances of defaming the character of the Plaintiff, this is a form of harassment.

23:35 "The parents of this child tried to get an order of protection against Cali Miller, an order which was denied by a judge of the name Jennifer Kinsley. The petitioner has not shown by a preponderance of the evidence that harassment has occurred sufficient to justify the issuance of an Order for Protection."

24:10 "Riada's TikToks lead to an online war between herself and the diddler squad."

25:22 "In the midst of all this back and forth, Katie Cruz goes on a diddler podcast, yes they have diddler podcasts."

27:39 The Defendant displays a screenshot of video 2 titled "How YouTube Protects Predators," of which the thumbnail is a photo of the Plaintiff.

33:40 "A natural temptation for me would have been to go on some sort of rant about how you, Cali, can't be a real Christian, because a real Christian would know not to hurt children in this way." (Defendant states that Plaintiff is not a Christian, and states that the Plaintiff hurts children.)

34:32 "But what I can say is that Jesus wants you dead. And you have to be pretty f__ing bad for Jesus Christ to want to slide on a b__ch."

### Video 4 titled "Pr3dators are Attacking This Channel (and they're losing)" published to YouTube on 2025-10-21

The thumbnail contained a copyrighted photo of the Plaintiff Cali Miller with blonde hair with a low cut shirt in front of a green screen, with the words "Got Her" superimposed behind her.

0:00 "This YouTube channel's community has been at war with a group of online people who like to beset children with harm."

0:48 "The Katie Cruz Saga, which contains our entire battle with Katie Cruz and her diddler squad."

1:05 "Katie Cruz is a known online predator."

1:17 "(Katie) is part of a pretty robust predator Mastodon server."

1:57 The Defendant displays a screenshot of video 2 titled "How YouTube Protects Predators," of which the thumbnail is a photo of the Plaintiff.

2:19 "I then laid low for a little bit because I was working on a master plan which I unleashed… two days ago." (Defendant describes that the defamation and harassment was premeditated.)

2:26 The Defendant displays a screenshot of video 3 titled "Content Fed: Katie Cruz" in which the thumbnail contained a copyrighted photo of the Plaintiff Cali Miller with blonde hair with a black streak wearing a blue shirt.

3:16 "So far I have received, so far, four different privacy complaints on my variety of videos about Katie Cruz." (This demonstrates that the Defendant is aware of the habitual nature of the harassment and defamation, yet continues to make videos about the Plaintiff.)

3:30 "If YouTube takes any of these videos down, I might make a "How YouTube Protects Predators Part 2"" (This shows the habitual nature of the harassment and defamation, implying that the Plaintiff is a predator.)

4:39 "On my recently released Content Fed video, Katie Cruz / Cali Miller did threaten my life." (He reads comments from his YouTube where he implies he will bring a gun when he comes to the Plaintiff's home towm. The Plaintiff states in no uncertain terms that if the Defendant tries to shoot the Plaintiff, the Plaintiff will defend themself. Defendant states he will file a police report on it, but he doesn't imagine it will do anything, meaning he doubts the police would view it as a threat."

6:38 Recommits to plan of harassment of bringing the large posterboard of the Plaintiff to the Plaintiff's hometown.

7:01 "I think if I'm going to issue an ultimatum like that, and if I might have to potentially issue an ultimatum... to a future different predator…" (Compares Plaintiff to a predator)

7:43 "If the Content Fed video and the other Katie Cruz videos just get more exposure, that's the best possible scenario… share the Content Fed video." (Encouraging viewers to spread defamation and harassment.)

### Video 5 titled "The Person In This Thumbnail Is Trying To Kill Me" published to YouTube on 2025-10-21

The original thumbnail contained a copyrighted photo of the Plaintiff, Cali Miller, with blonde hair with a black streak wearing a blue shirt.

After the Plaintiff got YouTube to remove the thumbnail, the Defendant uploaded another thumbnail, a different copyrighted photo of the Plaintiff with blonde hair and a low cut shirt in front of a green screen, but this time with the Plaintiff's face blurred.

0:00 "Last night I uploaded a video titled "Pr3dators are Attacking My Channel (and they're losing)"… Predators are attacking my channel and they happen to be winning at the moment."

0:16 "About a month and a half ago, I made a video about a predator whose name I'm not going to say here." (Referring to the videos about The Plaintiff)

0:21 "This is someone who has a blog in which they've cataloged their ==years long attempts at grooming a 7 year old==, which is the least bad thing about them."

0:40 "==Crimes against humanity==." (Stating that the Plaintiff is committing crimes.)

1:00 Defendant describes =="plan"== to bring the large print out to Plaintiff's home town to harass and defame her. This shows that this was premeditated. "==Tell the locals what they had done==" implying the Plaintiff had done something illegal or unethical with a child.

1:48 "My Content Fed video ultimately got taken down because of a privacy complaint." This demonstrates that the Defendant knows what he is doing was harassment. He recommits to bringing the large print out of the Plaintiff to their hometown and "tell all the locals all about this person," as a way to harass and defame the Plaintiff.

2:02 "==This individual has also threatened my life==." (Again, repeating The Plaintiff's statement of self defense equates to a threat.)

2:28 "The ==predator== replied" referring to The Plaintiff.

2:52 "So this person is openly saying that if I show up to Shelbyville Indiana, to exercise my free speech rights, she's gonna try to kill me." He attempts to mislead the viewer to believe that his line "always strapped," meaning, to carry a firearm, wasn't him saying he was coming to the Plaintiff's town with a gun, prompting the Plaintiff's reply of self defense.

3:14 "The original video that this ==predator== got taken down is now back up."

3:25 "It's demonetized." (This shows The Defendant was for a time profiting or attempting to profit from the defamatory videos.)

3:49 "I know several people from my community downloaded (the Content Fed video)… so if you're one of those people, you have my full blessing, go ahead and reupload that anywhere you want to. Do anything you want with it. I ultimately just want as many eyes on this thing." (Encouraging others to share video of defamation to harass the Plaintiff)

4:24 "If you're someone who has any desire to help with this, the best thing to do right now is to just get the word out about this person." (Conspiring with and encouraging others to defame and harass the Plaintiff)

**Video 6 titled "Free Sly Boy" published to YouTube on 2025-10-24**

0:30 "Katie Cruz... believes that she has the right to take down anyone's video anywhere on the internet, if they're speaking ill of her… I've had several videos removed from the site." (Admits to multiple counts of defamation)

2:08 "Every single video I put up about this person gets taken down." (Admits to habitually defaming and harassing The Plaintiff)

2:36 "Some people have been reuploading my videos. I wholeheartedly encourage that. If you're one of those reuploaders, download this video because this absolutely will also be taken down." (Encouraging viewers to defame and harass the Plaintiff)

### III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment shall be granted if 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'

A factual dispute is 'genuine' only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The nonmoving party must present more than 'a mere scintilla of evidence' in support of its position. Id. at 252.

Where, as here, the record demonstrates no genuine factual dispute and the undisputed facts entitle the movant to judgment, summary judgment is proper.

### IV. ARGUMENT

#### A. Defendant's Statements Constitute Defamation Per Se

To establish defamation under Indiana law, a plaintiff must show:
1. A communication with defamatory imputation;
2. Malice;
3. Publication; and
4. Damages. Kelley v. Tanoos, 865 N.E.2d 593, 596 (Ind. 2007).

Defendant's accusation that Plaintiff is a 'predator' with intent to harm a child imputes criminal conduct and moral turpitude—categories recognized as defamation per se. See Bals v. Verduzco, 600 N.E.2d 1353, 1356 (Ind. 1992). In such cases, damages are presumed and need not be proven separately.

The undisputed record shows that Defendant's statements were false, maliciously made, and publicly disseminated. Therefore, Plaintiff is entitled to judgment as a matter of law on the defamation claim.

#### B. Defendant's Conduct Also Constitutes Harassment

Indiana law recognizes a civil cause of action for harassment where conduct is intentional, repetitive, and designed to cause emotional distress or fear. Defendant's repeated publication of false accusations and online targeting of Plaintiff constitute a deliberate campaign of harassment.

Plaintiff's unrefuted evidence demonstrates a pattern of intimidating and degrading communications, satisfying the elements of actionable harassment under Indiana common law.

#### C. No Genuine Issue of Material Fact Exists

Defendant has failed to present admissible evidence disputing:
- The falsity of his statements;
- His knowledge of their falsity;

- The publication to third parties; or
- The resulting harm to Plaintiff.

Because no reasonable jury could find for the Defendant on these elements, summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court grant summary judgment in her favor and enter judgment on all counts, awarding such further relief as the Court deems just and proper, including compensatory and punitive damages, attorney's fees, and costs.

Respectfully submitted,

*Cali Miller*

**Cali Miller**
Date: 2025-10-27

**CERTIFICATE OF SERVICE**

      I hereby certify that on this date, I electronically filed the foregoing document using the CM/ECF system, which will send notice to all registered counsel of record.

Date: 2025-10-27
/s/ Cali Miller